STACY, C. J., dissenting.
BARNHILL and WINBORNE, JJ., concur in dissent.
This proceeding began as a petition for partition, the plaintiff alleging that he was the owner as cotenant with the defendant of a one-half undivided interest in a certain tract of land which he describes, making specific reference to a deed of D. A. Jefferson and wife to R. O. Jefferson, from which quotations are made below.
The defendant denied that the plaintiff had any interest in the lands and pleaded sole seizin, claiming title through the D. A. Jefferson deed to R. O. Jefferson, and mesne conveyance by R. O. Jefferson to himself. He further claimed by virtue of a deed from Nolan Jefferson, the son of R. O. Jefferson. The defendant further asked equitable relief by way of reformation of the D. A. Jefferson deed, alleging that it was the intention of the parties to convey the lands in fee simple to Jefferson in such a way that he might convey the lands in fee simple to his brothers, but that if he did not so convey to one of his brothers during his lifetime that upon his death the land should become vested in his boy children; and avers that "if said deed fails to express such an intent, then such failure is due to the mutual mistake of the grantors and grantees or to a mistake of the draftsman."
The plaintiff, replying to that portion of the answer asking affirmative relief pleaded that the cause of action, if any existed, arose more than three years prior to the bringing of this action, and pleaded the statute of limitation; and further pleaded estoppel of the defendant by laches on the ground of his knowledge of the mistake for a long time and his failure to take any action during the lifetime of the grantor and grantee in the deed.
The plaintiff offered in evidence a deed from D. A. Jefferson to R. O. Jefferson dated 14 August, 1903, and duly recorded.
The defendant admitted that the petitioner is one of the "boy heirs" of the grantee in this deed, "he having left two boy children."
The petitioner testified that R. O. Jefferson, the grantee of the foregoing deed, was his father; that he died 9 March, 1940; that he left one son besides witness, named Nolan Jefferson, who was much older than witness. *Page 335 
The plaintiff then offered in evidence a deed from Nolan Jefferson and wife, Viola, to C. M. Jefferson, dated 10 December, 1924, duly recorded.
It was agreed that the deed covered the same tract of land as that conveyed by D. A. Jefferson and wife to R. O. Jefferson in the deed previously introduced.
The plaintiff rested. Thereupon, the defendant moved for judgment as of nonsuit, which was denied.
The defendant then offered in evidence a deed from R. O. Jefferson and Mary T. Jefferson to the defendant, dated 14 February, 1914, duly recorded. It was admitted by the plaintiff that the first tract of land described in this deed is the identical land described in the deed from D. A. Jefferson and wife to R. O. Jefferson, and from Nolan Jefferson to C. M. Jefferson.
C. M. Jefferson, the defendant, testified that he was the C. M. Jefferson referred to in the deed from R. O. Jefferson; that R. O. Jefferson was his brother; that they were both sons of D. A. Jefferson. According to his testimony, there were three or four boy children born to R. O. Jefferson, but only two lived after his death. Nolan was born some six years prior to 14 August, 1903. Nolan and C. D. Jefferson had brothers who died as small children. Witness had in his possession the deed from D. A. Jefferson and wife to R. O. Jefferson since 1914, and had read it. He knew what was in it but didn't know that he knew the meaning. He got a deed from Nolan Jefferson for his interest in the tract of land in 1924, but paid him nothing for it; had known since then what was in the deed, "but about the meaning of what was in it I could not say I did." Witness was not present when the deed of D. A. Jefferson to R. O. Jefferson was drawn.
E. H. Jefferson, a witness for defendant, testified that he was a son of D. A. Jefferson and brother of C. M. Jefferson. He stated that he prepared the deed of D. A. Jefferson to R. O. Jefferson at the instance of his father and his mother. He stated that his father had directed him to write the deed in a way that R. O. Jefferson could give title for the land to one of his brothers if the brother saw fit to buy, and he wished to sell, but, otherwise, he would not have a right to convey the land. He assigned as a reason for giving this instruction that he did not want R. O. Jefferson to sell the land to somebody that would be unattractive to the other owners of his own brothers' land and, therefore, he did not want him to sell it unless he sold it to his brothers. On cross-examination, witness stated that he put in the deed exactly what his father told him to put in there, as nearly as he could; stated that his father told him that he wanted R. O. Jefferson's boy children to have this land after R. O. Jefferson's death, if he died before he had the opportunity to sell *Page 336 
to one of his brothers. "He told me to put in there whatever is there. He didn't want R. O. Jefferson to sell it unless he sold it to his brothers. He told me to put in there to give it to R. O. Jefferson for his lifetime and then to R. O. Jefferson's boy children, if he died before making a conveyance." "The deed presents that to the best of my knowledge. I wrote it just like he said, with a provision in the deed giving it to R. O. Jefferson for his lifetime and then to his boy children, but in case an emergency came and he wished to sell he could sell to a brother; he could sell his life estate to a brother at any time."
Upon the conclusion of all the evidence the defendant renewed his motion for judgment of nonsuit, which was overruled.
Further evidence gave the chronology of the birth and death of the children of R. O. Jefferson, as follows: Cecil, who was born and died before the execution of the deed; Lonnie Hunter and Delmar, twins, who were born in 1911 and died respectively in 1911 and 1916; Willie, who was born in 1915 and died in 1917. Petitioner, C. D. Jefferson, was born in 1908; Nolan was born about 1895.
The deed from D. A. Jefferson and wife to R. O. Jefferson, omitting parts not essential for consideration, is as follows:
"STATE OF NORTH CAROLINA,
BEAUFORT COUNTY.
"THIS DEED Made this the 14th day of August, 1903, by D. A. Jefferson and wife, Leurany C. Jefferson, of Beaufort County and State of N.C. of the first part, to R. O. Jefferson of Beaufort County and State of N.C. of the second part:
"WITNESSETH, That said party of first part in consideration of Fifty Dollars, to them in hand paid by party of 2nd part, the receipt of which is hereby acknowledged, have bargained and sold, and by these presents do bargain, sell and convey to said R. O. Jefferson heirs and assigns, a certain tract or parcel of land in Beaufort County, State of N.C. adjoining the lands of C. M. Jefferson and others, bounded as follows, viz.: . . .
"This deed is conveyed to the said grantee to him his lifetime and then to his boy children.
"TO HAVE AND TO HOLD the aforesaid tract or parcel of land, and all privileges and appurtenances thereto belonging, to the said R. O. Jefferson and his heirs and not to assign only to his brothers their only use and behoof forever.
"And the said D. A. Jefferson and wife, Leurany C. Jefferson, covenant with said R. O. Jefferson and his heirs and assigns, that they are seized of said premises in fee, and have right to convey in fee simple; *Page 337 
that the same are free and clear from all incumbrances, and that they will warrant and defend the said title to same against the claims of all persons whomsoever."
Three issues were submitted to the jury, as follows:
"1. Is the plaintiff, Carl D. Jefferson, the owner in fee simple, and entitled to the immediate possession of a one-half undivided interest to the land described in the complaint?
"2. Was the deed from D. A. Jefferson and wife to R. O. Jefferson, recorded in Book 120, page 558, public registry of Beaufort County, executed by mutual mistake of the grantor and the grantee in said deed, or was there a mistake of the draftsman in said deed?
"3. If so, is the defendant's cause of action for mutual mistake or for mistake of the draftsman barred by said limitations?"
Upon the issues submitted, the court charged as to the first issue: "The court instructs you that if you find the facts to be as all the evidence, oral and documentary, in this case tends to show, and by its greater weight, it will be your duty to answer that issue Yes."
As to the second issue: "The court instructs you that if you find the facts to be as all the evidence in the case tends to show it will be your duty to answer that issue No."
And as to the third issue: "If you find the facts to be as all the evidence in the case tends to show, the court instructs you to answer the third issue Yes."
Thereupon, the jury answered as to the first issue "Yes," the second issue "No," and the third issue "Yes."
To these instructions, severally, the defendant objected and excepted. From the judgment ensuing the defendant appealed, assigning errors.
The first question for decision is whether the deed of D. A. Jefferson conveys to his son, R. O. Jefferson, an estate in fee or an estate for life only, with remainder to his "boy children."
It will be noted that in the conveying clause the grant is to "R. O. Jefferson heirs and assigns," and in the habendum clause we have "to the said R. O. Jefferson and his heirs and not to assign only to his brothers for their only use and behoof forever," and the warranty is made "to the said R. O. Jefferson and his heirs and assigns." While it does not appear in the evidence, it seems probable that the draftsman used some printed form which he endeavored to adapt to the purpose of the parties, with such changes as seemed suitable. *Page 338 
The portion of the habendum clause which restrains any assignment except to the brothers of the grantee is equally consistent with the assignment of the life estate as with an assignment of the fee, and it throws little light upon a proper construction of the deed.
Defendant's counsel strenuously contend that we must confine ourselves to the more formal parts of the deed as controlling interpretation, and for reasons mostly technical, arising from the frequent use of the word "heirs," as above stated, it is insisted that the effect is to convey to the grantee R. O. Jefferson an estate in fee simple. But we feel impelled to consider, as expressive of a different intent, the clause written into the instrument between the conveying and the habendum clauses: "This deed is conveyed to the said grantee to him his lifetime and then to his boy children." This provision cannot be regarded as a mere interpretative expression of the grantor as to the effect of his deed. It is an essential part of the instrument and, standing alone, would be sufficient to convey the lands in the manner and with the effect indicated. It must, therefore, be compared, and if possible reconciled, with other parts of the deed, in order to give effect to its intention, as construed from its four corners.
It is obvious that if we are guided only by other parts of the deed which, because of the use of the word "heirs" would carry to the grantee the estate in fee, we should have to ignore entirely the mention of the grantee's life estate, the direct reference to the boy children, and the remainder which the grantor desired them to have, and, in fact, would be compelled to strike the whole clause from the deed, no matter how prominently the grantor thrusts it upon our attention. This, we think, would be to ignore a part of the deed which in comparison with the more formal technical expressions used elsewhere might be considered the clearest expression of intent to be found in the instrument, and explanatory of its seemingly contradictory expressions. Even if we should consider some repugnancy to exist, it is still our duty to construe the deed upon consideration of all its parts in such a way as to give effect to that which we find to be its true intent. Triplett v. Williams,149 N.C. 394, 63 S.E. 79; Midgett v. Meekins, 160 N.C. 42, 75 S.E. 728;Gold Mining Co. v. Lumber Co., 170 N.C. 273, 87 S.E. 40; In re Dixon,156 N.C. 26, 72 S.E. 71. See annotations to Triplett v. Williams,supra, p. 399.
Amongst the technicalities discarded in the modern rules of interpretation, as pointed out in Triplett v. Williams, supra, and cases following, is the artificial importance given to clauses in the deed, the labels they bear, and the order in which they occur. Even those technical words which, under the common law and by virtue of long use have come to designate the particular kind of an estate conveyed, nothing else *Page 339 
appearing, must give way to clearer expressions of intent if they are found in other parts of the instrument. In that case we find expressions pointedly applicable to the present case. With reference to the use of the word "heirs," we find: "All conveyances of land executed since the passage of the act" (Act of 1879, C. S., 991) "are to be taken in fee simple, unless the intent of the grantor is plainly manifest in some part of the instrument to convey an estate of less dignity. It is the legislative will that the intention of the grantor and not the technical words of the common law shall govern. . . . The insertion of the word `heirs' in the premises was evidently in deference to an established formula and creates, in our opinion, no repugnance between the granting clause and the habendum, inasmuch as the same estate would pass to the plaintiff whether this word be inserted or omitted." We apprehend that the same principle applies here, although the expression of intent occurs elsewhere than in the habendum.
In Jones v. Whichard, 163 N.C. 241 (246), 79 S.E. 503, Justice Hoke, speaking for the Court, said: "In Triplett v. Williams, supra, this Court, in a well sustained opinion by Associate Justice Brown, announced the decision that although a deed in its terms professed to convey an estate to a grantee and its heirs, it would not have the effect of conveying a fee simple when it clearly appeared from the habendum or other portions of theinstrument that it was the intent to convey only a life estate." Italics supplied.
We hold that the effect of the deed from D. A. Jefferson to R. O. Jefferson was to convey to R. O. Jefferson an estate for life only, with remainder in fee to his "boy children." C. S., 991.
Under the rule favoring early vestment of estates, and since one of the boy children, Nolan Jefferson, was in esse at the time the deed was made, the remainder immediately vested in him, subject to be opened up, however, to admit the after-born children mentioned in the evidence. Powell v.Powell, 168 N.C. 561, 84 S.E. 860; Waller v. Brown, 197 N.C. 508,149 S.E. 687; Roe v. Journegan, 175 N.C. 261, 95 S.E. 495. Consulting the chronology of births and deaths above given, we find that, in accordance with the statute of descents, the interests of the children who were born and who died subsequently to the making of the deed, devolved upon the plaintiff, C. D. Jefferson, and Nolan Jefferson.
It follows that the deed of R. O. Jefferson to the defendant conveyed only his life estate in the property, which has terminated by the death of the grantor. The defendant derives his title from Nolan Jefferson, and thereby acquired a one-half undivided interest in the lands, which he holds as cotenant with the plaintiff.
In view of the conclusion we have reached, it becomes unnecessary to discuss the evidence relating to the alleged mistake of the draftsman of *Page 340 
the D. A. Jefferson deed, or the exceptions based thereupon, since we are convinced that the trial judge committed no error in his instruction to the jury on the bar of the statute of limitation. The other instructions were free from error.
In the trial, we find
No error.